UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v. CASE NO. 8:12-CR-205-T-17MAP

ANGEL VILLANUEVA, et AL.

_______________________________/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 467 | Motion to Suppress Statements and Derivative Evidence (Deonte Jamal Martin) |
| Dkt. 473 | Sealed Notice of Filing, with Exhibits |
| Dkt. 562 | Response |
| Dkt. 639 | Court's Exhibit List |
| Dkt. 640 | Government's Exhibit List |
| Dkt. 641 | Defendant Martin's Exhibit List |
| Dkt. 713 | Report and Recommendation |
| Dkt. 738 | Objections to Report and Recommendation |
| Dkt. 741 | Transcript |
| Dkt. 760 | Response to Objections |

The above Motion to Suppress was referred to the assigned Magistrate Judge to conduct a hearing, if necessary, and for a Report and Recommendation. The assigned Magistrate Judge conducted a hearing on March 22, 2016, and has issued a Report and Recommendation in which it is recommended that the Motion to Suppress be granted in part and denied in part.

In the Motion to Suppress, Defendant Martin seeks the suppression of statements and derivative evidence. The statements were made on August 1, 2013, August 8, 2013, May 14, 2014 and June 13, 2014.

Case No. 8:12-CR-205-T-17MAP

In Count 25 of the Second Superseding Indictment, Defendant Martin, with others, is charged with the killing of Brenton Coleman on August 1, 2013. Defendant Martin was questioned by two law enforcement officers on August 1, 2013 at Defendant's home.

On August 8, 2013, Defendant Martin was arrested at the Taco Bell at 3700 Cortez Road, Bradenton, FL pursuant to a federal warrant for drug charges. (Case No. 8:13-CR-391-T-23TGW). While in custody, Defendant Martin was given Miranda warnings and was interviewed by law enforcement officers until Defendant Martin said he no longer wanted to speak with the officers.

On May 14, 2014, Agents Deslauriers and Sears went to Citrus County Jail to collect a DNA swab from Defendant Martin, after obtaining a DNA search and seizure warrant earlier that day. Defendant Martin was given Miranda warnings. Defendant Martin refused to answer questions. An "Advice of Rights and Waiver" form indicates "Refused to answer questions", next to Defendant Martin's initials and above Defendant Martin's printed name (Dkt. 467-12).

Defendant Martin remained in federal custody after sentencing in Case No. 8:13-CR-391-T-23TGW on January 9, 2014. On May 29, 2014, the Second Superseding Indictment ("SSI") was filed in this case. Defendant Martin was named as a defendant in the SSI, a warrant was issued that day, and the U.S. Marshal Service received the warrant on June 2, 2014. On June 4, 2014, the U.S. Marshal Service moved Defendant Martin from Citrus County Jail to the Federal Detention Center in Tallahassee to await designation to a permanent facility. The U.S. Marshal Service moved Defendant Martin from FDC Tallahassee to the Seminole County Jail, where the U.S. Marshal Service arrested Defendant Martin for this case on June 10, 2014. On June 11, 2014, the U.S. Marshal Service transported Defendant Martin to the Pinellas County Jail.

On June 13, 2014, Agents Deslauriers and Sears questioned Defendant Martin about the charges in this case. Agent Deslauriers gave the Miranda warnings to Defendant Martin at the beginning of the interview. Defendant Martin signed an "Advice of Rights and Waiver." (Dkt. 467-17). The Agents then showed photographs to Defendant Martin and questioned Defendant Martin extensively about his knowledge of the people shown in the photographs.

The Court notes that the date that appears on the transcript of the June 13, 2014 interview (Dkt. 473-2) is June 12, 2014; at the hearing on March 22, 2016, the Court acknowledged that the correct date is Friday, June 13, 2014. (Dkt. 741, p. 117, l. 12-13).

In the Report and Recommendation, the assigned Magistrate Judge recommends that the Motion to Suppress statements and derivative evidence be denied as to August 1, 2013 and August 8, 2013 and recommends that the Motion to Suppress statements and derivative evidence be granted as to June 13, 2014 as to the statements and derivative evidence made after Defendant Martin's first invocation of the right to remain silent (Govt. Ex. 6, p. 62, l. 1286).

As to August 1, 2013, the assigned Magistrate Judge found that Defendant Martin did not meet the burden of proving that the interview rose to the level of a formal arrest, based on the totality of the circumstances. The assigned Magistrate Judge found that Defendant Martin was not in custody during the interrogation, and no Miranda warning was required.

As to August 8, 2013, the assigned Magistrate Judge found that the Government met its burden of proving by the preponderance of the evidence that Defendant Martin's Miranda waiver and statements were voluntary, under the totality of

the circumstances.

As to June 13, 2014, the assigned Magistrate Judge notes that Government says it will not offer any statements Defendant Martin made after his second invocation of the right to remain silent that occurred near the end of the June 13 interview. Defendant Martin's first invocation is "I just got through talking to you" (Gov. Ex. 6, p. 62, l. 1286) and the second invocation is "I'm done talking about it" (Gov. Ex. 6, p. 82, l. 1693).

The assigned Magistrate Judge found that the Government, by its silence on the issue and acknowledgment that agents should have honored Defendant Martin's later invocation, necessarily concedes that Defendant Martin was in custody for Miranda purposes. The assigned Magistrate Judge found that Defendant Martin articulated his desire to remain silent with sufficient clarity so that a reasonable police officer under the circumstances would understand the statement. See United States v. Davis, 512 U.S. 452, 458-59 (1994)(clarity of invocation of right to counsel determined objectively from perspective of reasonable police officer); Berghuis v. Thompson, 560 U.S. 370, 381 (2010)(Davis standard applies to right to remain silent).

Defendant Martin objects to the conclusion that Defendant Martin was not in custody on August 1, 2013, and to the conclusion that Defendant Martin was lucid enough to voluntarily waive his Miranda rights and give a voluntary statement on August 8, 2013. Defendant Martin further objects to the analysis and factual and legal conclusions as to the June 13, 2014 interview.

I. Standard of Review

The District Court determines de novo any part of the Report and Recommendation that has been properly objected to. The District Court may accept, reject, modify in whole or in part the recommended disposition, may receive further

evidence, or may recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. Sec. 636(b)(1); Fed. R. Civ. P. 72(b)(3). [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record to accept the recommendation. To the extent that the magistrate judge has made findings of fact based upon the testimony of witnesses heard before the magistrate judge, the district court is obligated to review the transcript or listen to the tape-recording of those proceedings. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988).

II. Discussion

Based on Defendant's Objections, Defendant Martin requests that the Motion to Suppress be granted in total.

A. August 1, 2013

Defendant Martin objects to the legal conclusion that "Defendant Martin fails to show he was in custody when the officers questioned him in his front yard." Defendant Martin also objects to the last two paragraphs on page 5 of the Report and Recommendation, in which the assigned Magistrate Judge considers the evidence of record, and weighs the totality of the circumstances. Defendant Martin also objects on the basis of Defendant Martin's claim that the initial detention was illegal as lacking even reasonable suspicion, which is not addressed in the Report and Recommendation.

Detective Levita testified at the hearing on March 22, 2016 (Dkt. 741, pp. 37-55). Detective Levita testified he pulled up to the house around 9:00 p.m. (p. 40). He saw two black males; one went in to the house and one came toward him. Detective Levita got out of the car, introduced himself, shook hands with Defendant Martin, and

explained that they were there to investigate a shooting (p. 49). Detective Levita's conversation with Defendant Martin took place in front yard (p. 40). Detective Levita was in plain clothes (p. 40). Detective Levita testified he had his sidearm at his waist; he did not draw his weapon. (p. 43); he also had a flashlight. (p. 44). Detective Levita testified he had a "normal" conversation with Defendant Martin (p. 43). Detective Levita denied that he had any trouble with Defendant Martin. (p. 43). Detective Levita spoke 10-15 minutes with Defendant Martin, then Defendant Martin went back and forth into the house; Detective Levita asked Defendant Martin to ask the other person to come out. (p. 52). Detective Levita did not want to enter house (p. 42), as there was a python in the living room (p. 42); Detective Levita remained in front yard when he spoke with Defendant Martin (p. 52). Detective Levita testified that Defendant Martin did not have his ID on him; Defendant Martin verbally gave Detective Levita his name and date of birth (p. 50). Detective Levita and Detective French were there 30-40 minutes total (p. 52). At the end of the conversation, Detective Levita thanked Defendant Martin and gave him his card. (p. 43).

Defendant Martin did not testify at the hearing.

1. Consensual Encounter or Terry Stop

Defendant Martin contends the August 1, 2013 conversation was a Terry stop without reasonable suspicion. A law enforcement officer may seize a suspect for a brief, investigatory Terry stop where: 1) the officer has a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and 2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. State of Ohio, 392 U.S. 1, 22 (1968).

In determining whether a police-citizen encounter was consensual, which does not implicate the Fourth Amendment, or whether a seizure has occurred, the Court

considers the following factors:

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching, and the language and tone of voice of the police.

United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011). The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority. Id.

"Absent express orders from the person in possession," an officer may "walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006)(citing Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964). The Fourth Amendment is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises. id.

After considering the relevant factors and record evidence, the Court concludes that Defendant Martin's statements on August 1, 2013 were made in the course of a consensual encounter.

2. Custodial Status for Miranda Purposes

Pre-custodial questioning does not require Miranda warnings. See United States v. Brown, 441 F.3d 1330, 1347-49 (11th Cir. 2006). "A defendant is in custody for the purposes of Miranda when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Id. at 1347 (quoting California v. Beheler, 463 U.S. 1121 (1983). This is a totality of the circumstances

determination, under an objective standard, defining "custody" from the perspective of a reasonable innocent person. The Court considers whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled. United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989). Other relevant factors may include the location of the questioning, its duration, the types of statements made during the questioning, the presence of physical restraints, and the release of the suspect at the end of questioning. Howes v. Fields 132 S.Ct. 1181, 1189 (2012).

The assigned Magistrate Judge weighed the totality of the circumstances (Dkt. 713, pp. 2-6), and concluded that Defendant Martin was not in custody.

Defendant Martin has not identified a factual or legal basis for his objection.

After considering the totality of the circumstances, the Court concludes that Defendant Martin was not in custody for Miranda purposes on August 1, 2013. The Court **overrules** Defendant Martin's objections as to this issue.

B. August 8, 2013.

Defendant Martin objects to the conclusion that the facts do not show Defendant Martin was too high on controlled substances to voluntarily waive his rights and otherwise make a voluntary statement , and the same conclusion beginning at the last paragraph on page 9 and ending at the first paragraph on page 10 of the Report and Recommendation.

A defendant may waive his Miranda rights, provided that the waiver is made voluntarily, knowingly and intelligently. "This inquiry has two distinct dimensions...First, the relinquishment of the right must have been voluntary in the sense that it was the

product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine, 106 S.Ct. 1135, 1141 (1986). This determination is made based on the totality of the circumstances, including the details of the interrogation and the defendant's characteristics. United States v. Bernal-Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010). If a defendant alleges he was under the influence of drugs or alcohol when he made his statements, the question is whether the defendant's "will was overborne at the time he confessed." Lynumn v. State of Illinois, 372 U.S. 528, 534 (1963); Parker v. Allen, 565 F.3d 1258, 1280 (11th Cir. 2009).

The assigned Magistrate Judge found that the Government sustained its burden as to the voluntariness of Defendant Martin's waiver and statements on August 8, 2013.

The Court has reviewed the transcript of the interview. Defendant Martin was given the Miranda warnings, said he understood them (Dkt. 473-1, p. 2), then answered questions posed to him. Toward the end of the interview, Detective Curulla asked Defendant Martin if he was high (Dkt. 473-1, p. 34), then asked a series of questions: "Do you know who the President of the United States is? What city are we in? Do you know what year it is? Do you know what month we're in? Defendant Martin answered most of the questions correctly, and Detectives Bliss and Curulla resumed questioning Defendant Martin. After Defendant Martin said he did not want to talk them anymore (Dkt. 473-1, p. 38), there was a brief exchange, and the interview ended.

Based on the transcript, the Court finds that Defendant Martin was able to comprehend the Miranda warnings, the significance of waiving Defendant's rights, and

the questions that followed.

Defendant Martin has not identified a factual or legal basis for Defendant's objection.

After consideration, the Court **overrules** Defendant Martin's objections as to this issue.

C. June 13, 2014

Defendant Martin objects to the conclusion beginning on page 12 and analysis ending on 14 page that Defendant Martin's custody differs from the types of custody Rule 5 and Sec. 3501(c) envision. Defendant Martin further objects that a holding not reached in Corley v. United States, 556 U.S. 303, 207-308 (2009) was imported into the Report and Recommendation. Defendant Martin asserts that the cases cited in the Report and Recommendation do not support the conclusion that the provisions of Rule 5 and Section 3501 do not apply to a person in custody under another federal sentence. Defendant Martin further objects that the Report and Recommendation does not address the enhanced administrative segregation custody status in which Defendant Martin was placed (Dkt. 467, pp. 8-9) and as shown at the March 22, 2016 hearing.

Defendant Martin also objects to the reasoning, and factual and legal conclusions that Defendant Martin's prior invocations became ineffective after the passage of fourteen days. Defendant Martin argues that the reliance on Maryland v. Shatzer, 559 U.S. 98, 112 (2010), is erroneous because Defendant Martin was never released into the free world after his prior invocations, so could not "get reacclimated" to his normal life and shake off any residual coercive effects of his prior custody.

Case No. 8:12-CR-205-T-17MAP

In the Report and Recommendation, the assigned Magistrate Judge notes that Defendant Martin had two complaints as to the interview of June 13, 2014: 1) Agents interrogated Defendant beyond the six-hour safe harbor window allotted by 18 U.S.C. Sec. 3501(c), for which Defendant Martin seeks suppression of Defendant's statements; and 2) Defendant Martin invoked the right to remain silent in previous encounters with agents (July 8, 2013, August 8, 2013 and May 14, 2014) and Defendant Martin twice invoked his right to remain silent during the course of the interview. Defendant Martin contends that agents should have honored Defendant Martin's earlier invocation of his right to remain silent. In the alternative, Defendant Martin invoked his right to remain silent twice during the interrogation, and the agents did not honor either invocation.

The Government agrees with Defendant Martin's second invocation of the right to remain silent, and says it will not offer in its case-in-chief any statements made after that invocation (Gov. Exh. 6, p. 82, l. 1696).

Defendant Martin has raised many objections to the conclusions of the assigned Magistrate Judge, without identifying the basis for Defendant Martin's objection.

1. Voluntary Waiver

The Court notes the following exchange at the beginning of the interview on June 13, 2014:

Agent: Deonte, how old are you again?

Deonte Martin: Twenty-four.

Agent: Twenty?

Case No. 8:12-CR-205-T-17MAP

Deonte Martin: Four.

Agent: Twenty-four. Let me tell you what I want to do today. I want to explain to you why we took your DNA. I want to show you some pictures of people. And it's going to kind of give away part of the investigation, which at this point doesn't really matter. Okay. I mean, you know why we're here–sorry. You know why we're here, I'm sure. So I want to do that. Are you willing to look at some pictures and see if you know these people? Are you willing to talk to us a little bit today, see what's going on with your case?

Deonte Martin: Yes.

Agent: Okay. I'm going to go over the same thing we went over the other day, okay? I'm going to read (unintelligible). I know it's the same thing.

You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer before we ask you any questions, and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed to you, if you wish, before any questioning begins. And if you decide to answer any questions without a lawyer present, you have the right to stop answering at any time.

This is just saying, I have read the statement of my rights or they've been read to me. I understand these rights. At this time, I'm willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or any— or any force of any kind has been used against me.

> What I want to do is I want to ask you some questions. You don't have to answer the question. If I ask you a question and you want to answer that question, answer it. If you are not comfortable with a question I'm asking you, you don't have to answer it. Okay? Do you understand that?
>
> I'm going to print your name here. I going to show you some pictures real quick. Some of these people I know you know, some people you may not know, and that's fine......

(Dkt. 473-2, pp. 1-3.

The Court notes that Defendant Martin initialed the "Advice of Rights of Rights and Waiver" form. (Dkt. 467-12).

In the Motion to Suppress, Defendant Martin argues that Defendant Martin was deceived by the false promise of the Agents in a way that directly conflicts with the Miranda warnings, such that suppression is required. "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005). Defendant Martin says the false promise in this case was the Agents were there to advise Defendant what was going on about his case, why DNA swabs were taken, and look at some photos.

As noted above, the Court considers whether, based on the totality of the circumstances, the defendant made an uncoerced choice, with knowledge of the right being abandoned, and the consequences of the choice to abandon the right.

The Miranda warnings were given to Defendant Martin on June 13, 2014. On a previous occasion, the Miranda warnings were given, and Defendant Martin exercised

his right to remain silent. On June 14, 2014, the Miranda warnings given to Defendant Martin plainly expressed to Defendant Martin that Defendant Martin had the choice to answer, or not answer, all questions or a particular question. Later in the interview, Defendant Martin invoked his right to remain silent. Based on the totality of the circumstances, the Court finds that Defendant Martin's waiver was not coerced by deception, that Defendant Martin understood his rights and the consequences of abandoning those rights. There was no false promise prior to the commencement of the interview which induced Defendant Martin to make statements.

The Court **overrules** Defendant Martin's objection as to this issue.

2. Delay in Presentment

The assigned Magistrate Judge found that Defendant Martin's custody at the time of the June 13, 2014 statements differed from the types of custody Fed. R. Crim. P. 5 and Sec. 3501(c) envision. Therefore, the presentment rule did not apply. In the Report and Recommendation, the assigned Magistrate Judge looked to Maryland v. Shatzer, 559 U.S. 98 (2010); Corley v. United States, 556 U.S. 303 (2009); United States v. Presley, 487 F.3d 1346 (11th Cir. 2007); United States v. Harrison, 461 F.2d 1127 (5th Cir. 1972); United States v. Keaveny, 405 F.2d 821 (5th Cir. 1969) and Rademacher v. United States, 285 F.2d 100 (5th Cir. 1960). The assigned Magistrate Judge further notes that the arrest warrant was superfluous, as Defendant Martin was already in custody; the prosecutor simply needed to arrange Defendant Martin's presence before this Court to answer to the indictment, which was accomplished via the prosecutor's Sec. 3621(d) request to the marshal.

18 U.S.C. Sec. 3501(e) provides:

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or

given orally or in writing.

18 U.S.C. Sec. 3501(c) provides:

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

Federal Rule of Criminal Procedure 9(c)(1)(B) states that "The officer executing the warrant must proceed in accordance with Rule 5(a)(1)."

Federal Rule of Criminal Procedure 5(a) provides:

(a) In General.

(1) Appearance Upon an Arrest.

(A) A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise.

Case No. 8:12-CR-205-T-17MAP

In Defendant Martin's Motion to Suppress, Defendant Martin argues that Defendant Martin was questioned on June 13, 2014 prior to Defendant Martin's first appearance hearing before a Magistrate Judge; Defendant Martin was arraigned on June 18, 2014. Defendant Martin points out that there was a significant delay is Defendant's presentment, unlike the other Defendants in this case. Defendants Nathaniel Harris, Napoleon Harris, Charlie Green, Corey Harris and Jerry Green were arrested on June 5, 2014. Defendants Napoleon Harris, Charlie Green and Corey Harris were arraigned that day. Nathaniel Harris was charged in the First Superseding Indictment, and was not arraigned following his arrest on the Second Superseding Indictment. Defendant Jerry Green was arrested on June 10, 2015 and was arraigned on that day.

Defendant Martin further argues that Defendant Martin was questioned on June 13, 2014 while Defendant Martin was being held in administrative segregation solely because of the indictment in this case.

Defendant Martin argues that the delay in presentment was unreasonable and unnecessary, and therefore Defendant Martin's June 13, 2014 statements must be suppressed.

At the time that Defendant Martin was arrested in connection with this case, it is undisputed that Defendant Martin was in legal custody, serving a sentence imposed in Case No. 8:13-CR-391-T-23TGW on January 9, 2014. Defendant Martin was in administrative segregation prior to the June 13, 2014 statements, and was in administrative segregation after the June 13, 2014 statements. Although the placement in administrative segregation did relate to this case, Defendant Martin did not face a higher level of security or any continuing restraints as a result of the June 13, 2014 interrogation. The pressures of custodial interrogation ended when Defendant Martin returned to his "normal life," lawful imprisonment imposed upon conviction for a

crime. Defendant Martin's decision to exercise his Miranda rights or to waive his Miranda rights did not have any impact on Defendant Martin's placement in administrative segregation.

In Maryland v. Shatzer, 559 U.S. 98 (2010), the United States Supreme Court held that:

1. the Edwards rule, under which a suspect who has invoked his right to the presence of counsel during custodial interrogation is not subject to further interrogation until either counsel has been made available or the suspect himself further initiates exchanges with the police, does not apply if a break in custody lasting 14 days has occurred, and

2. defendant's return to the general population, after he had invoked his right to the presence of counsel during custodial interrogation regarding allegations of criminal conduct separate from the conduct underlying the defendant's conviction, constituted a break in custody.

In Maryland v. Shatzer, the Supreme Court noted that lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in Miranda; sentenced prisoners are not isolated with their accusers, and their detention is relatively disconnected from their prior unwillingness to cooperate in an investigation. The former interrogator has no power to increase the duration of incarceration, which was determined at sentencing.

Defendant Martin has objected to the Court's reliance on Maryland v. Shatzer, supra, because Defendant Martin was never released into the free world after his prior invocations, could not have gotten "reacclimated" to his normal life, and shaken off any residual coercive effects of Defendant's prior custody. The Court **overrules** Defendant Martin's objection, since there was a break in custody of more than 14 days, in that Defendant Martin's prior invocation was on May 14, 2014, while Defendant Martin was

in custody, and Defendant Martin's "normal life" at the time of his arrest in connection with this case was that Defendant Martin was in legal custody, serving a sentence of incarceration imposed in another criminal case.

After consideration, the Court **overrules** Defendant Martin's objections to the legal conclusion that the presentment rule did not apply in this case.

Other courts have noted that the impact of a Miranda waiver was not presented to the Court in Corley v. U.S., 129 S.Ct. 1558 (2009)(holding that Congress meant to limit the McNabb-Mallory presentment exclusion, not eliminate it, when it enacted the statute providing that confession shall not be inadmissible solely because of delay in presentment if confession is found by the trial judge to have been made voluntarily and within six hours of arrest). In United States v. Hector, 2013 U.S. Dist. LEXIS 82730 (N.D. Ga. January 29, 2013), the Court observes that, as a general rule, questions not expressly litigated and considered by the Supreme Court are not considered part of the binding holding of the case. The Hector Court notes that, although the dissent in Corley discusses the impact of a Miranda waiver, the majority does not address it. In Hector, the Court found that Corley did not directly overrule precedents holding that a waiver of Miranda rights is a waver of the right to prompt presentment. Therefore, O'Neal v. United States, 411 F.2d 131 (5th Cir. 1969)(holding that although accused was arrested about noon and was not taken before the United States Commissioner until next morning, extra-judicial admissions made by accused in the interim after he had been advised of his constitutional rights were admissible) remains a binding precedent. In O'Neal, the Fifth Circuit Court of Appeals points out that Mallory v. United States, 354 U.S. 449 (1957) was decided before Miranda v. Arizona, 384 U.S. 436 (1966). "Mallory was intended to insure that a suspect not be held for long hours of interrogation during which he had only his own personal stamina with which to resist an overbearing police barrage, and that if he were so intimidated the evidence thus gleaned could not be used at trial. With Miranda however, came the decree that all persons taken into custody

must be immediately warned of certain constitutional rights. Appellant was given these warnings. He knew he was entitled to counsel and that he need not speak to the officers at all. Knowing this, he chose to speak....His detention before seeing the Commissioner, though delayed, caused him no harm." See O'Neal, 411 F.2d at 136-137.

In this case, Defendant Martin waived his Miranda rights prior to the commencement of the June 13, 2014 statements; Defendant Martin waived any objection to delay in presentment via his Miranda waiver. Accordingly, it is

**ORDERED** that Defendant Martin's Objections are **overruled**. The Court **adopts and incorporates** the Report and Recommendation. Defendant Martin's Motion to Suppress is **denied in part and granted in part**. The Motion to Suppress is **granted** as to all statements on June 13, 2014 after the first invocation of Defendant Martin's right to remain silent (Gov. Ex. 6, p. 62, l. 1286).

**DONE and ORDERED** in Chambers in Tampa, Florida on this 13th day of June, 2016.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record